UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA, : 26-CR-00044(VMS)

-against- : United States Courthouse
: Brooklyn, New York

YEHUDA RINGEL, : Tuesday, March 31, 2026
: 11:00 a.m

Defendant.

\- - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M SCANLON
UNITED STATES MAGISTRATE JUDGE

A P P E A R A N C E S:

For the Government: JOSEPH NOCELLA, JR., ESQ.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201
BY: MOLLY NEILEN DELANEY, ESQ.
Assistant United States Attorney

For the Defendant: MEISTER SEELIG & FEIN
125 Park Avenue
8th Floor
New York, New York 10017
BY: ILANA HARAMATI, ESQ.

Court Reporter: VICTORIA A. TORRES BUTLER, CRR
225 Cadman Plaza East/Brooklyn, NY 11201
VButlerRPR@aol.com
Proceedings recorded by mechanical stenography, transcript produced by Computer-Aided Transcription.

(In open court.)

(Judge VERA M SCANLON enters the courtroom.)

THE COURTROOM DEPUTY: All rise.

This is a criminal cause for a change of plea hearing in United States of America versus Ringel, Docket Number 26-CR-44.

Counsel, could you state your names for the record, beginning with the Government.

MS. DELANEY: Molly Delaney on behalf of the United States.

Good morning, Your Honor.

THE COURT: Good morning.

MS. HARAMATI: Good morning, Your Honor.

Ilana Haramati on behalf of Yehuda Ringel, who is seated to my right.

THE HEBREW INTERPRETER: Hebrew interpreter for the Court, Meir Turner -- M-E-I-R, T-U-R-N-E-R.

THE COURT: Okay.

Okay, do you need to be sworn in?

THE HEBREW INTERPRETER: Today I have not.

THE COURT: Suzanne.

THE COURTROOM DEPUTY: Are you an employee of the Court?

THE HEBREW INTERPRETER: I'm a freelancer.

THE COURTROOM DEPUTY: Okay. Thank you. Could you

please stand, raise your right hand. Could you state your name once again for the record.

THE HEBREW INTERPRETER: Meir, M-E-I-R, Turner, T-U-R-N-E-R.

THE COURTROOM DEPUTY: Okay.

Do you swear that the interpretation you will provide for the Court from English to Hebrew, and Hebrew to English, will be an accurate representation of each language?

THE HEBREW INTERPRETER: I do, yes.

THE COURTROOM DEPUTY: Okay, thank you.

(Official interpreter sworn.)

THE COURT: All right.

So I am Judge Scanlon. We are here, originally scheduled for the change of plea, but there was an issue that came up along the way that I am also going to ask about. Some of the issues in the matter related to the bond may overlap with the proposed plea process. So, I am going to ask about that first. And then, depending on the information I receive, see where we should go with the proposed plea.

So let me just remind the Defendant, you have the right to remain silent. That means you do not need to say anything. Anything you do say, except to your lawyer, may be used against you. You have the right to be represented by an attorney. If you cannot afford an attorney, the Court would appoint one to represent you.

So Attorney Haramati, are you retained or appointed?

MS. HARAMATI: Retained, Your Honor.

THE COURT: Okay.

If you need to speak with your lawyer as we go along today, you can let me know, and I will give you that opportunity.

So, the first issue I am going to ask about, I'll start with the Government in a moment, is the violation of the release conditions. And just so you know what I have, I have:

The original bond, which was issued on September 15th of 2025.

Then there was -- I have the docket with some of the relevant submissions and that included -- there had been a request to modify the conditions. That is on the docket at 20.

And then there was a February 11th order that denied that application without prejudice. And if required, the submission of additional information, if the Defendant was going to renew the application.

And then at 21, and I have a copy of that document with only a little bit of information taken out, is on the docket at 21 asking for the modifications and providing the information that the Judge Marutollo had said needed to be included in the application.

And then on the docket at February 12th is the grant

of that order. Okay.

And then I have from pre-trial a memorandum dated March 19th of 2026. It outlines the conditions to which the Defendant was subject, and then provides some information about some health events and lack of communication with pre-trial.

So I should just also say, I have the original Pre-Trial Services report. All right.

So, let me hear from the Government first, and then Pre-Trial, and then Defense Counsel, we'll see where we are.

MS. DELANEY: Thank you, Your Honor.

The Government has spoken with Defense Counsel about these two violations, and I believe Defense Counsel, along with Pre-Trial, can provide additional color on the events.

The first event I do believe that Mr. Ringel's supervision was originally in the District of New Jersey. When it was transferred over to Staten Island, I believe there was a miscommunication about what evaluations had originally been ordered and not completed when he was in New Jersey. I do believe there were efforts both that the Defendant made to complete those evaluations, however, there was difficulty obtaining an interpreter that the parties were satisfied with.

THE HEBREW INTERPRETER: I'm sorry, difficulty obtaining an interpreter?

MS. DELANEY: An interpreter that the parties were

satisfied with, who would meet the standards for the evaluation.

THE COURT: If you can just move your mic closer to you, easier to hear. Okay.

MS. DELANEY: With respect to the second event, Your Honor, I will defer to Defense Counsel to explain more of the situation about the medical event because I believe they can provide a proper context about what happened there.

THE COURT: All right.

We'll hear from Pre-Trial and then Defense Counsel.

PTSO SARNELLI: Yes, Your Honor.

Pre-Trial is concerned due to the Defendant's recent admission into the hospital, which was reported to be an overdose of anxiety medication, however, he has not completed the Court-ordered psychosexual evaluation and is obtaining this medication through Israel, it appears.

We have spoken to Defense Counsel after filing the violation memo and she has reported she has found an interpreter, and we can schedule the psychosexual evaluation.

THE COURT: Okay.

Was there any other compliance issue that Pre-Trial is concerned about?

PTSO SARNELLI: Your Honor, there have been a few minor noncompliance with home detention, such as unauthorized leaves and stops. However, this has been addressed with the

Defendant as well as Defense Counsel.

THE COURT: Okay.

All right, Defense Counsel?

MS. HARAMATI: Your Honor, I think Pre-Trial pretty accurately summarized it. I'll say with respect to the psychosexual evaluation, the terms of the bond require the evaluation at the direction of Pre-Trial Services. Mr. Ringel was originally supervised in New Jersey and Pre-Trial did not direct him to obtain a psychosexual evaluation. I actually addressed it with New Jersey Pre-Trial at the time of his supervision and they said that they did not believe that was necessary.

When he was transferred here, when he moved here and his supervision was transferred to Brooklyn, Officer Sarnelli indicated that was something that he was required to do. He did -- he went to an evaluation. There was a language barrier. And in the interim, I've worked on finding a translator that will be appropriate for -- that basically that the healthcare provider is comfortable with as well. So, I am going to be scheduling that.

I will say, some of this also has to do with costs, right? Bringing in the translator, it's quite costly. And if there is a way for the Court to help us facilitate using any of the Court certified interpreters for purposes of this Pre-Trial Services mandated evaluation, I think that could

also go a long way to assisting, making sure we can complete this in a timely fashion.

THE COURT: So, I have no idea what the usual payment structure is when an interpreter is needed for this Court mandated evaluation and possibly follow-up services. So, I am looking at Pre-Trial.

PTSO SARNELLI: Your Honor, for the evaluation, I believe it might be one or two sessions. If treatment is recommended, it would be individual, weekly sessions.

If -- I know that he does not have health insurance and does not have the funds to do private counseling, but that's also an option where he would just do his own therapy and we would be in contact with the provider, but I don't believe that's an option at this time.

THE COURT: Okay. What usually -- say he can't pay for it for the sake of this discussion, which would be something to be evaluated separately. What usually happens when someone speaks another language for these evaluations and for follow-up sessions, if necessary?

There are lots of folks who don't speak English, right?

PTSO SARNELLI: Yes.

Well, usually, like I said, there's either a private counselor, which they would pay. Or they would go to our contract provider and have an interpreter. I've asked around

the office and nobody has had a case like this.

THE COURT: Do you think usually the provider arranges for the translator; is that what you're saying?

PTSO SARNELLI: If it's a private counselor who speaks that language or the contract provider --

THE COURT: Right, okay, so how does the contract provider work?

PTSO SARNELLI: The client would be responsible for paying for the interpreter. They don't have -- unless it's Spanish or Mandarin.

THE COURT: And do they not have the call-in services?

PTSO SARNELLI: No. I've tried everything. I've looked everywhere.

THE COURT: It seems like something that needs more work because, I mean, at a minimum --

PTSO SARNELLI: Yeah.

THE COURT: -- there's phone translation services. Whether that meets the clinical needs, you know, that's a different question, but we're not even up to that yet. But I have not done any legal research, but I am imagining, if we are requiring him to do this, we have to make this so that it is possible. He cannot do it in English, so we need to have translator help. I'm split about whether he is going to someone who he's going to pay for or whether the contract

services, seems like -- let's go back to Defense Counsel.

You are suggesting your client would be open to going and having the evaluation with one of the contracted providers?

MS. HARAMATI: Absolutely. And he already attempted to do that, you know, a few weeks ago in accordance with Pre-Trial's direction.

THE COURT: All right.

I think we need more work on the Pre-Trial side.

PTSO SARNELLI: Yeah. I've done my research, I'm sorry. I will try more.

THE COURT: It needs to go up the chain of command because I doubt this is a one-off, and there are computer-based and phone-based translation services, at a minimum. That would seem like it would work but, you know, we are moving into the area of the evaluator's professional requirements, right? I assume there's a lot of confidentiality involved, often in translation, which is a particular kind of conversation that not everyone might be comfortable translating for and I think maybe -- I just think this needs more work.

Okay, so I'm going to direct Pre-Trial to look more into this issue. Right now, where we are is that the Defendant is ready and willing to appear for an appointment with a contract provider for Pre-Trial for the psychosexual

evaluation; is that correct?

MS. HARAMATI: Correct, Your Honor.

THE COURT: All right.

Close the loop on this for the translator. All right.

So what I want is Pre-Trial to look into it and Counsel for the Defendant and Pre-Trial to be in touch with what can work here. Okay.

All right. What about the mental health event?

MS. HARAMATI: Sure.

Your Honor, I don't -- my understanding is that it was not a mental health event, it was a physical -- it was a physical health event.

THE COURT: Okay.

MS. HARAMATI: Mr. Ringel, back in Israel years ago had a gastric surgery, and he takes medication related to that. His alcohol consumption has to be quite minimal, and he had a drink, and it interacted with his medication, and so he went to the hospital for that. And so, I think the overdose was -- this is my, you know, as a nonmedical professional, my understanding of what happened; that it was, you know, the overdose was really because he had -- he had an alcoholic beverage and that interacted with his medication. Not that he overdosed on his pills. He took the same medication that he has been taking throughout, which incidentally he was

prescribed also when he was at the MDC here.

THE COURT: Is it a mental health medication? I mean, the one that's mentioned? You do have a copy of the Pre-Trial Services memo, yes?

MS. HARAMATI: Yes, yes, Your Honor.

If you can just give me one, one moment, Your Honor.

(Pause in the proceedings.)

MS. HARAMATI: Okay, yes, Your Honor, the medication is an anxiety medication.

THE COURT: Okay.

You are saying he's regularly on it?

MS. HARAMATI: Yes.

THE COURT: All right.

Does Pre-Trial have any issue with that prescription or any issues around the medication?

PTSO SARNELLI: Your Honor, it appears the prescription is prescribed from Israel and he's not in any mental health treatment at this time. So, we're just concerned, where is he getting this prescription from and if it's valid, since he's not meeting with a mental health provider regularly.

MS. HARAMATI: My suggestion, Your Honor, is that all of this will be worked out when he goes to the mental health evaluation, and I will work closely with Pre-Trial to make sure that that happens expeditiously.

THE COURT: Okay.

All right. Then from Pre-Trial's perspective, if the evaluation is moving forward really soon, let's figure out this translator issue.

Is there any other attention or relief that you're looking for?

PTSO SARNELLI: No, Your Honor.

THE COURT: All right.

For the Government, anything?

MS. DELANEY: No, Your Honor.

THE COURT: Okay.

That is the issue in the context of the violation report. We will go over this in a bit more detail, but on the Defense Counsel side, do you have any concerns about your client's mental health such that we should reschedule, change, do something different than what was planned with regard to a proposed plea?

MS. HARAMATI: No, Your Honor. We are prepared to proceed and Mr. Ringel is, from my perspective, totally sound and prepared to proceed today.

THE COURT: Okay. All right.

Let me jump ahead. Assuming that we get through all of what was scheduled here, is there going to be any request to change any of the conditions?

MS. DELANEY: Not from the Government, Your Honor.

MS. HARAMATI: No, Your Honor.
THE COURT: Okay. All right.
PTSO SARNELLI: Okay, thank you.
THE COURT: If we need you, we will call you back. Thanks.
(Pre-Trial Services leaves.)
THE COURT: All right. So, we are switching gears here, and I've been putting it all under the umbrella of a change of plea, but that's not exactly what we're doing here.
From the paperwork submissions that I have, which, just so we're all literally on the same page, I have the Information, an elements sheet that was prepared by the Government and is dated March 30th.
I have a Waiver of Indictment form, which is dated today.
I have a consent to have plea taken by a Magistrate Judge, that's dated today. We'll go over that.
And I have the plea agreement, which I am going to mark as Court Exhibit 1.
(Court's Exhibit 1, so marked.)
THE COURT: Okay.
Okay. So, that is the paperwork that I have.
For both Counsel, have you seen and, as necessary, do you have a copy of that paperwork?
MS. DELANEY: Yes, Your Honor.

MS. HARAMATI: Yes, Your Honor.

THE COURT: Okay.

So, my understanding of what is going to happen here, you can correct me if I'm wrong about this, is the Defendant is going to, after I explain it to him, waive his right to an indictment, arraignment on the Information, and then we will proceed, assuming he had entered a not guilty plea on that arraignment, proceed with a plea agreement through a change of plea hearing, and after he has all of that information, if he still wants to, he will plead guilty to the counts in the Information.

MS. DELANEY: Yes, Your Honor.

THE COURT: Is that what you have?

MS. HARAMATI: Yes, Your Honor.

THE COURT: All right.

So, all right. Let's start with a question for the Government. Are there any victims of the offense in the Information, and if so, has the Government notified them of today's hearing and the right to attend and be heard?

MS. DELANEY: There are no identified victims in the Information, Your Honor. However, the Government is aware of our obligations and will notify any victims as they become identified.

THE COURT: Okay.

All right. So, just -- we're doing this all on the

same record, but we are going to continue to use the services of the Hebrew language interpreter, who previously took an oath that he would translate from English to Hebrew and Hebrew to English.

All right. So, for Mr. Ringel, I just went over what I understand the proposed process to be here. I just want to give you a heads-up that some of these proceedings often happen separate from each other, and so there are questions that I will ask at each piece of the proceeding that may overlap. That's an intentional overlap, we are not confused as to what's happening, but the goal here is to make sure that each piece of the proceedings here can standalone and are complete.

All right. So, do you understand the process as I outlined it?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

All right, so, my role here is to make sure that you understand these proceedings and that when we get to the part of the proceeding, the change of plea, that you understand the consequences of a guilty plea. As we go along, I am going to provide you with information. I am also going to ask you some questions. I am going to require that your answers be made under oath, so I am going to ask my Courtroom Deputy here to administer an oath to you.

THE COURTROOM DEPUTY: Could you please stand and raise your right hand and state your name for the record?

THE DEFENDANT: Yehuda Ringel.

THE COURTROOM DEPUTY: Do you swear or affirm that the information you are about to provide to the Court is the truth, the whole truth, and nothing but the truth?

THE DEFENDANT: (In English) Yes.

**YEHUDA RINGEL,**

having been first duly sworn/affirmed, was examined and testified as follows:

THE COURT: All right, thank you.

All right, Mr. Ringel.

Do you understand that having just taken that oath, your answers to my questions are going to be subject to the penalties of perjury or of making a false statement if you do not answer truthfully?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

If you do answer any of my questions falsely, the Government could decide to prosecute you for the crime of perjury or of making a false statement, and in that prosecution, use any of the false statements that you make today; do you understand?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

So, you probably know this, but your case has been assigned to a District Judge, Judge Reyes. I am a Magistrate Judge. So, Judge Reyes is the Judge who will make the decision as to whether to accept the proposed guilty plea and to sentence you, if he accepts your plea.

So, you have the absolute right to have the District Judge conduct these proceedings, and if you want to do that, there won't be any prejudice to you. As an alternative, you can have me conduct these proceedings. And just so you know what the process is, as you can see, at the front of the courtroom here, we have a court reporter. The court reporter is taking down everything that's being said. When we finish the proceedings, she will prepare a written document, a transcript, that includes everything that was said here today. And the District Judge, Judge Reyes, will read that transcript in connection with deciding whether to accept your plea, and if he does, with your sentence.

Do you understand that process?

THE DEFENDANT: (In English) Yes.

THE COURT: And do you wish to give up your right to have the District Judge conduct these proceedings, including hearing your guilty plea, and instead proceed before me?

THE DEFENDANT: (In English) Yes.

THE COURT: And are you making this decision voluntarily and of your own free will?

THE DEFENDANT: (In English) Yes.

THE COURT: Has anyone threatened you or made any promises to you to get you to proceed here before me?

THE DEFENDANT: (In English) No.

THE COURT: All right.

In connection with that decision, I have this form that is: Consent to have a plea taken before United States Chief Magistrate Judge Vera M Scanlon, that's me. This form is written in English.

Did you read it in English, or was it translated for you into Hebrew?

THE DEFENDANT: (In English) My lawyer explain me.

THE COURT: Okay.

So Counsel, can you state on the record your review of the form?

MS. HARAMATI: Yes. Yes, Your Honor.

I speak Hebrew and Mr. Ringel and I went through it.

THE COURT: All right.

So, Mr. Ringel, do you understand what the form says?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay.

So, Mr. Ringel, you are free to answer in Hebrew if you want, or in English, it is up to you.

THE DEFENDANT: (In English) Thank you.

THE COURT: All right, do you agree with what the form says?

THE DEFENDANT: Yes.

THE COURT: And did you sign the form?

THE DEFENDANT: (In English) Yes.

THE COURT: And Counsel, did you sign the form?

MS. HARAMATI: Yes, Your Honor.

THE COURT: And for the Government, did you sign?

MS. DELANEY: Yes, Your Honor.

THE COURT: All right.

Based on what's been said here today by Mr. Ringel and by the attorneys, it appears that Mr. Ringel understands his right to proceed before the District Judge and is knowingly and voluntarily waiving that right. So, I am accepting that consent and signing the form as well.

I will just note one thing with regard to the form, the caption was not complete, so I wrote in Mr. Ringel's name.

Is that all right with Defense Counsel?

MS. HARAMATI: Thank you, Your Honor, yes.

THE COURT: Okay.

All right, we will file this with the clerk's office.

All right. Before we move ahead with the substance here, I am going to ask questions. These are directed at making sure, Mr. Ringel, that you are mentally, physically in

good enough health to go ahead with these proceedings. I already touched on that in connection with the Pre-Trial Services request for the hearing, which we just went over. So, again, some of this might overlap with what we already talked about, but I would like to make sure that the proceedings related to the proposed guilty plea are complete. All right.

So, I am going to provide you with some information. At this point, I'm going to ask you several questions. If you do not understand the questions, let me know, and I will try to clarify, okay?

THE DEFENDANT: (In English) Yeah.

THE COURT: All right.

If you could state for the record your full name.

THE DEFENDANT: (In English) Yehuda Ringel.

THE COURT: And how old are you?

THE DEFENDANT: (In English) Almost 20 --
32.

THE COURT: All right.

What is the highest level of education that you have achieved?

THE DEFENDANT: 12th grade.

THE COURT: Did you graduate from high school?

THE DEFENDANT: Yes.

THE COURT: All right.

Did you go to college at all?

THE DEFENDANT: A private university, yes.

THE COURT: And how long were you at the private university?

THE DEFENDANT: Almost three years.

THE COURT: And what did you study there?

THE DEFENDANT: I -- I worked on music therapy and playing instruments.

THE COURT: Okay.

Did you graduate from that university?

THE DEFENDANT: I received a document that is acceptable in Israel.

THE COURT: All right.

And since you -- when did you finish that program at the university?

THE DEFENDANT: 2023.

THE COURT: All right.

And since --

THE DEFENDANT: No, excuse me. At age 23.

THE COURT: Oh, at age 23.

All right. And since you were 23, have you had any other formal education?

THE DEFENDANT: In the sense that I've been working as a chef and my education has been in that area.

THE COURT: Okay.

All right, let me ask you a different kind of question. Are you presently under the care of a medical doctor?

THE DEFENDANT: Yes.

THE COURT: And for what medical conditions are you receiving or are you under the doctor's care?

THE DEFENDANT: For the last 11 years almost I sometimes felt pressure at work, and so he has recommended or prescribed Sertraline. For years now, every day, the same pill. Sertraline. For years.

THE COURT: All right. That's the medication we were speaking about earlier in connection with the Pre-Trial Services report; is that correct?

THE DEFENDANT: Yes.

THE COURT: Okay.

Just, there is obviously some overlap between mental and physical health, but let me focus on your physical health.

Are you under the care of a doctor for any physical conditions?

THE DEFENDANT: No.

THE COURT: Okay.

Do you have any untreated medical conditions?

THE DEFENDANT: No.

THE COURT: All right.

And now, on the mental health side, you have been

taking the medication that we just talked about.

How often do you consult with the doctor who prescribes that medicine?

THE DEFENDANT: This doctor requires one to see him once a year for 10, 15 minutes. And meanwhile -- and so far, throughout all these years, there have been no change whatsoever.

THE COURT: Okay.

When is the last time that you saw the doctor or spoke with him?

THE DEFENDANT: Truth be told, it will be almost a year now. But by phone, approximately four-and-a-half months ago, he spoke with me on the phone, though.

THE COURT: Okay.

Do you have any -- besides the condition that the doctor that you just mentioned was treating you for, do you have any other mental health conditions?

THE DEFENDANT: No.

THE COURT: All right.

Have you been treated by any other mental health professional, besides that doctor and the medical personnel that you saw at the hospital and the event that was the subject of the Pre-Trial Services report?

THE DEFENDANT: No.

THE COURT: Okay.

And I'm changing gears now.

In the past 24 hours, have you taken any medication?

THE DEFENDANT: I took the Sertraline.

THE COURT: Okay.

THE DEFENDANT: Last night.

THE COURT: Last night.

And have you taken any other medications besides the Sertraline?

THE DEFENDANT: No.

THE COURT: Have you taken any alcohol in the past 24 hours?

THE DEFENDANT: No.

THE COURT: Okay.

And have you taken any narcotic drugs in the last 24 hours?

THE DEFENDANT: No.

THE COURT: Okay.

Besides the issue with Sertraline that we've already talked about, have you ever been hospitalized or treated for drug addiction, alcoholism, or mental or emotional problems?

THE DEFENDANT: No.

THE COURT: Is your mind clear as you sit here today?

THE DEFENDANT: Absolutely.

THE COURT: And do you understand these proceedings?

THE DEFENDANT: Yes.

THE COURT: All right.

So, now I'm going to explain to you some of your rights and ask you different kinds of questions.

As the Defendant in a criminal case, you have the right to be represented by an attorney at every stage of the proceedings, from your arrest through trial and appeal. If you cannot afford an attorney, the Court would appoint one to represent you.

I understand that you have decided to hire your attorney, so Attorney Haramati is here to represent you. As I mentioned earlier, if you need to speak with her, you should let me know and you can do that; do you understand?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

Have you had any difficulty communicating with your attorney?

THE DEFENDANT: No.

THE COURT: And when you've spoken with your attorney, is it correct that you've spoken -- you've communicated with her through Hebrew because you both speak Hebrew?

THE DEFENDANT: In Hebrew, yes.

THE COURT: Okay.

Are you fully satisfied with the representation and

advice that your attorney has provided to you?

THE DEFENDANT: Very much so.

THE COURT: All right.

Counsel, have you discussed this case with your client?

MS. HARAMATI: Yes, Your Honor.

THE COURT: And we said this earlier, but just to confirm, you have communicated with your client primarily in Hebrew; is that correct?

MS. HARAMATI: Yes, Judge.

THE COURT: Have you had any difficulty communicating with Mr. Ringel?

MS. HARAMATI: None.

THE COURT: And are you satisfied that he understands the rights that he has in this proceeding and that he will be waiving if he decides to go ahead with the guilty plea?

MS. HARAMATI: Yes, Your Honor, we've reviewed those in detail.

THE COURT: In your opinion, is he capable of understanding of nature of these proceedings?

MS. HARAMATI: Yes.

THE COURT: Do you have any doubt as to his competence to plead at this time?

MS. HARAMATI: I do not.

THE COURT: Have you explained to him what it would mean to waive his right to a Grand Jury indictment?

MS. HARAMATI: Yes, we've reviewed that.

THE COURT: And do you believe he understood what you've explained to him?

MS. HARAMATI: Yes.

THE COURT: And did you explain to him the possible sentence -- sorry, I'll say it differently.

Have you explained to him the statutory penalties?

MS. HARAMATI: Yes.

THE COURT: And have you explained to him the operation of the sentencing guidelines in this case?

MS. HARAMATI: Yes.

Yes, Your Honor.

THE COURT: And do you believe he understood everything that you explained?

MS. HARAMATI: I do.

THE COURT: Okay.

All right. So, Mr. Ringel, in this case, there is a document called the Information. And in the Information, the Government charges you in Count One, possession of child pornography. And then there is also a criminal forfeiture allegation.

Do you know the document that I am speaking about?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

This document is in English.

Was it translated for you into Hebrew?

THE DEFENDANT: Multiple times, Your Honor.

THE COURT: Okay.

All right, so let me explain a little bit about the Information. This charges you with a felony of possession of child pornography. The Government is not permitted to come to court and simply file a charge like this unless you, the Defendant, agree. If you do not agree, the Government could pursue a different process.

Under the United States Constitution, a Defendant has the right to have evidence presented by the Government to a Grand Jury. The Grand Jury is a group of at least 16 and not more than 23 persons who determine whether or not there is probable cause to believe that you have committed the crime charged. In order for the Government to obtain an indictment, the Government would have to persuade a majority of the members of the Grand Jury that there was probable cause to believe that you had committed this offense.

Now, it's possible, I don't know enough about the case, but if the Government were to go to the Grand Jury, they might seek an indictment on more than one charge.

In order for you even to be charged with this crime, possession of child pornography, if you did not agree, the

Government would need to obtain an indictment. If the Grand Jury found there was probable cause to believe that you had committed this crime, the jury would return a document called an indictment. But if the Grand Jury did not find probable cause, no charge would be brought against you. So, if you decided to waive your right to an indictment, you are giving up the right to have the Grand Jury make the determination about probable cause and instead, you are agreeing that the Government can file a charge against you directly with the Court.

So, do you understand the Grand Jury rights that you have?

THE DEFENDANT: Yes.

THE COURT: Did you discuss it with your attorney?

THE DEFENDANT: Many times and for a long period of time.

THE COURT: Okay.

And did you discuss the matter of waiving your right to an indictment by a Grand Jury?

THE DEFENDANT: Yes.

THE COURT: And Counsel, are you satisfied that your client understands what it means to waive his right to an indictment by a Grand Jury?

MS. HARAMATI: Yes, Your Honor.

THE COURT: And do you know of any reason why he

shouldn't waive his right to an indictment?

MS. HARAMATI: I do not.

THE COURT: All right.

Mr. Ringel, has anyone made any threats or promises to you to get you to waive your right to be indicted by a Grand Jury?

THE DEFENDANT: No. I've done this of my own free will.

THE COURT: Okay.

And do you wish, in fact, to waive your right to be indicted by the Grand Jury?

THE DEFENDANT: Correct.

THE COURT: Okay.

So, I have a form that says: Waiver of an indictment. Again, this form is in English.

Was this form read to you in Hebrew?

THE DEFENDANT: Yes.

THE COURT: All right.

And do you understand the form?

THE DEFENDANT: Yes.

THE COURT: Do you agree with what it says?

THE DEFENDANT: Yes.

THE COURT: And did you sign the form?

THE DEFENDANT: Yes.

THE COURT: And Defense Counsel, did you sign?

MS. HARAMATI: I did, Your Honor.

THE COURT: All right.

Based on what's been said here today by Counsel and Mr. Ringel in connection with his right to be indicted by the Grand Jury, I find that he is knowingly and voluntarily waiving his right, so I am also signing this form and accepting it.

(Pause in the proceedings.)

THE COURT: All right. We will also file that with the clerk's office. All right.

So, to go back to something I said earlier, we are putting together many proceedings that often happen separate. So, we just went over the waiver of the Grand Jury indictment. We are going to have an arraignment on this Information, and then we will move on to the change of plea. All right.

So, Mr. Ringel, again, we went over this. There is this document called the Information. It charges you in Count One with possession of child pornography, and then it has a criminal forfeiture allegation. All right.

So Defense Counsel, do you want me to read this aloud?

MS. HARAMATI: No, Your Honor, we waive the public reading.

THE COURT: All right.

And did you review this in Hebrew with your client?

MS. HARAMATI: Yes, I did, Your Honor.
THE COURT: And do you believe he understands it?
MS. HARAMATI: Yes, I do.
THE COURT: And would you like to enter a plea on his behalf?
MS. HARAMATI: Yes, Your Honor.
At this time, Mr. Ringel pleads not guilty to the Information.
THE COURT: Okay.
All right. So, now we are going to move on to the change of plea part of this. Actually, I am going to do one thing. This is really just to make sure that the proceedings are complete.
If this had been happening separate, this would make more sense, but I am going to remind the Government that it has an obligation under Brady versus Maryland and its progeny to disclose to the Defense all information, whether admissible or not, that's favorable to the Defendant, material either to guilt or to punishment and known to the prosecution. The Government has to make good faith efforts to disclose such information to Defense as soon as reasonably possible. The Court will enter a written order that more fully describes this obligation and the possible consequences of failing to meet it. The Government is directed to review and comply with that order.

Does the Government confirm it understands its obligations and will fulfill them?

MS. DELANEY: Yes, Your Honor.

THE COURT: All right.

We're going to touch on this in a little while, but the Government and Defense have already been reviewing this case. I just provided that because this is the first appearance on this document called the Information. Okay.

So we are going to move to the change of plea. I am just going to confirm with Defense Counsel and with the Defendant, do you continue your consent to have me as the Magistrate Judge conduct these proceedings rather than proceeding before the District Judge?

MS. HARAMATI: Yes, thank you, Your Honor.

THE COURT: Okay.

All right. And again, Mr. Ringel, I'll just briefly remind you of your rights. You do have the right to remain silent. You do not have to say anything. Anything you say, except to your lawyer, can be used against you. We will likely get to the stage of these proceedings where I will be asking you about the allegations the Government has made, but I will explain that in a little bit. If you need to speak with your attorney as we go along today, let me know, and I will give you that opportunity. And as I mentioned earlier, you are entitled to have Counsel. I understand you have

retained Counsel. If you could not hire Counsel, the Court would appoint an attorney for you.

So, do you understand all of those rights?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

And we also have just spent a fair amount of time going over your mental and physical health.

Do you continue to feel mentally and physically well enough to proceed with this change of plea hearing?

THE DEFENDANT: Yes.

THE COURT: All right.

So, the document called the Information has the charge against you. So, Mr. Ringel, did you go over with your attorney what the Government would have to prove beyond a reasonable doubt in order for you to be convicted of this charge?

THE DEFENDANT: Yes.

THE COURT: All right.

This is called the elements of the crime. I am going to ask the Government to state on the record what the elements of the crime of possession of child pornography are.

MS. DELANEY: Yes, Your Honor.

First --

THE COURT: Sorry, let me say one other thing.

This is outlined in the document the Government

provided, the elements sheet, but I am still going to have the Government state it on the record.

MS. DELANEY: First, that the Defendant knowingly possessed one or more visual depictions.

Second, that the visual depictions were transported using any means or facility of interstate commerce or in or affecting interstate commerce or were produced using materials that had been transported in or affecting interstate or foreign commerce.

Third, that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct and portrayed that minor engaged in that conduct.

Fourth, that the Defendant knew that the production of the visual depictions involved the use of a minor engaged in sexually explicit conduct and the visual depiction portrayed a minor engaged in that conduct.

And fifth, that one or more visual depictions involved a minor who had not yet attained twelve years of age.

THE COURT: All right.

For Defense Counsel, did the Government correctly state the elements of possession of child pornography?

MS. HARAMATI: Yes, Your Honor.

THE COURT: All right.

And do you believe that Mr. Ringel understands these elements?

MS. HARAMATI: Yes, I do.

THE COURT: And Mr. Ringel, do you understand the elements?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

I am now going to ask the Government to state on the record the evidence that the Government would offer at trial in order to establish the elements of this offense.

MS. DELANEY: Your Honor, the Government would offer testimony from law enforcement agents from the day that Mr. Ringel entered the country at the airport at JFK with his electronic device.

The Government would also offer evidence from that electronic device, including one or more visual depictions that showed a child engaging in sexually explicit conduct, including one or more visual depictions that included infants engaging in sexually explicit conduct and other prepubescent minors.

THE COURT: And did the Government provide discovery to the Defense?

MS. DELANEY: No, Your Honor. The Government has proffered information about the images to Defense Counsel.

THE COURT: All right.

And Defense Counsel, did you have that discussion with the Government about the evidence the Government would

proffer -- sorry, I'm saying it incorrectly.

Did you review the evidence that the Government just described and that it proffered to you?

MS. HARAMATI: Your Honor, we discussed the proffered evidence with the Government a number of times since Mr. Ringel's arrest last May.

THE COURT: All right.

Do you believe the Government would be able to establish the elements of the offense of possession of child pornography, which is the count to which is proposed that Mr. Ringel plead guilty to based on the evidence described by the Government?

MS. HARAMATI: I do, Your Honor.

THE COURT: And did you review with your client the application of the elements to the evidence?

MS. HARAMATI: Yes, Judge.

THE COURT: And do you believe he understood the application of the evidence to the elements?

MS. HARAMATI: I do, Your Honor.

THE COURT: And Mr. Ringel, do you understand the application of the evidence described by the Government to the elements as stated by the Government?

THE DEFENDANT: (In English) Yes.

THE COURT: All right.

Did you have a sufficient opportunity to discuss

with your attorney the application of the evidence to the elements?

THE DEFENDANT: Yes.

THE COURT: All right.

So, Mr. Ringel, do you understand what it is that the Government would have to prove in order for you to be convicted of possession of child pornography and what it is the Government is proposing it would offer at trial in order to try to do that?

THE DEFENDANT: Yes.

THE COURT: All right.

Now, I am going to provide you with some information about your trial rights.

If you decide to enter your proposed guilty plea, you would be giving up these rights. So, just a few minutes ago you pled not guilty to the Information. You have the right to persist in that plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So, it is up to you to decide what you want to do in your case, not your lawyer's decision, your family's decision, or anyone else's decision. You can withdraw your previously entered plea of not guilty and enter a plea of guilty, as I am told you wish to do, or you can choose to go to trial, and if you want to do that, you would

persist in your plea of not guilty.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you persist in the plea of not guilty, you would have the right under the Constitution and laws of the United States to a speedy and public trial by a jury with the assistance of your lawyer on the charge contained in the Information.

I would note that, as I said earlier, it is possible that if this case does not go forward on the Information, the Government would try to obtain an indictment from the Grand Jury and there could be additional charges, but you would have the right, under the Constitution and laws of the United States, to that speedy and public trial by the jury, with the assistance of your attorney, on either the charge in the Information or any charges that are contained in that indictment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At a trial, you would be presumed innocent, you would not have to prove your innocence. Under the American legal system, the Government has the burden to prove beyond a reasonable doubt that a Defendant is guilty of the crime charged. And if at trial the Government failed to meet that burden of proof, the jury would have the duty to

find you not guilty.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: So, sometimes juries have returned verdicts of not guilty even though the jurors believe the Defendant on trial probably committed the crimes charged. When the jury does that, what the jurors are saying is that they not necessarily believe the Defendant to be innocent, but rather that they are not convinced beyond a reasonable doubt that the Defendant is guilty.

So, do you understand the distinction there?

THE DEFENDANT: Yes.

THE COURT: All right.

If you were to have a trial, witnesses for the Government would have to come to court and testify in your presence. Your attorney could cross-examine each witness. Your attorney can object to the evidence offered by the Government. And your attorney could offer evidence on your own behalf.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Your attorney could also subpoena or compel witnesses to come to court and testify.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: At trial, you would have the right to testify on your own behalf if you wanted to do so, but you could not be forced to testify. Under the U.S. Constitution and the laws of the United States, no one can be forced to be a witness against himself. So, if you had a trial and you did not want to testify, you would not testify and the judge would tell the jury and instruct the jury that they could not hold that fact against you.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: All right.

If you decide to plead guilty, and if the District Judge accepts your plea, you will be giving up your Constitutional right to a trial and all of the other rights that I just described. There won't be a trial in your case. Instead, the Judge will enter a judgment of guilty based upon your plea.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty, I am going to have to ask you questions about what you did in order to satisfy myself and the District Judge that you are guilty of the crime charged. You are going to have to answer those questions and acknowledge your guilt, and in doing so, you will be giving up your right not to testify against yourself.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you enter the plea of guilty today and you admit the criminal conduct alleged in the Information, and the District Judge accepts your plea, you won't be able to appeal to a higher court the question of whether you committed the crime or not. That will be resolved by your plea.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: All right.

Are you willing to give up your right to a trial and all of the other rights that I just described?

THE DEFENDANT: Yes.

THE COURT: All right.

So, in your case, there is a document called the plea agreement. I have marked it as Court Exhibit 1 of today's date. This document is in English.

Was it translated for you from English to Hebrew?

THE DEFENDANT: Yes, several times.

THE COURT: Okay.

All right. So, did you have the plea agreement translated for you in its entirety?

THE DEFENDANT: Yes, from end to end.

THE COURT: Was it your attorney or a translator who did the translation for you?

THE DEFENDANT: My attorney did so and did so excellently.

THE COURT: All right.

Do you understand this entire agreement?

THE DEFENDANT: Yes.

THE COURT: All right.

I am going to turn to the last page of the agreement and read two sentences that are in the middle of the page.

It says: I have read the entire agreement, I have discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

Are those two statements correct?

THE DEFENDANT: Yes.

THE COURT: Okay.

On my copy, which is the original, I am holding it up. Right below that, there is a signature where your name is printed.

Is that your signature?

THE DEFENDANT: Correct.

THE COURT: And directly below that, Defense Counsel, is that your signature?

MS. HARAMATI: Yes, Your Honor.

THE COURT: All right.

Mr. Ringel, in signing this agreement, were you indicating your intent to be bound by all of its provisions?

THE DEFENDANT: Correct, yes.

THE COURT: All right.

I'll just note that this is dated March 31st and we have some signatures from the Government. All right.

So, AUSA Delaney, did you sign this treatment?

MS. DELANEY: Yes, Your Honor.

THE COURT: And below your signature, there is room for a Supervising Assistant U.S. Attorney's signature.

Whose signature is this?

MS. DELANEY: AUSA Megan Farrell, my supervisor, Your Honor.

THE COURT: Okay.

And what was her role in connection with this plea agreement?

MS. DELANEY: She reviewed and signed off on the plea agreement and also, other communications and negotiations with Defense Counsel.

THE COURT: Okay.

All right. Does the Government represent that the plea agreement, Court Exhibit 1 before the Court, contains the entirety of the understanding that the United States Attorney's Office has reached with Mr. Ringel?

MS. DELANEY: Yes, Your Honor.

THE COURT: And Defense Counsel, were all formal plea offers conveyed to Mr. Ringel?

MS. HARAMATI: Yes, Your Honor.
THE COURT: All right.
And does the plea agreement, Court Exhibit 1, contain the entire agreement that Mr. Ringel has entered into with the U.S. Government?
MS. HARAMATI: It does.
THE COURT: All right.
Mr. Ringel, is there anything in this plea agreement that is not clear to you?
THE DEFENDANT: Everything is clear, Your Honor.
THE COURT: All right.
Other than the promises that are contained in the written plea agreement, Court Exhibit 1, has anyone made any other promises to you that are causing you to plead guilty?
THE DEFENDANT: No one did.
THE COURT: Has anyone threatened you to get you to agree to this plea agreement?
THE DEFENDANT: No.
THE COURT: All right.
I am going to review some parts of the plea agreement in some additional detail.
First, we are going to look at the penalties for the crime to which it is proposed you are going to plead guilty. And that particular crime is the possession of child pornography in violation of Federal law 18 United States Code

Section 2252(a)(4)(B).

That count carries the following statutory penalties: The maximum term of imprisonment of twenty years and a minimum term of imprisonment of zero years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

You should know there is no parole in the Federal system so that if you are sentenced to a term of imprisonment, you should expect that you will serve all or almost all of that term of imprisonment in prison.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: All right.

There is a provision for supervised release. If you are placed on -- when you are placed on supervised release, there may be many restrictions on your liberty, including having to report to a probation officer, limits on your travel, and other restrictions. The minimum supervised release term is five years, the maximum supervised release term is life. The supervised release term follows any term of imprisonment.

If you are to violate a condition of supervised release, you could be sentenced for up to two years, and that would be without credit for pre-release imprisonment or time

previously served on post-release supervision.

And in your case, there is a particular additional provision. If you were to commit any of a set of criminal offenses that are identified in particular parts of Federal law, I won't name them, but that's Chapter 109A, 110 or 117, or violations of 18 United States Code Section 1201 or 1591, for which the term of imprisonment longer than one year can be imposed, you shall be sentenced to not less than five years and up to the maximum term of imprisonment for the offense as set forth in paragraph 1-A, which was the 20 years. Okay.

So do you understand everything I have just said about supervised release?

THE DEFENDANT: Yes.

THE COURT: The maximum fine that can be imposed is $250,000.

Do you understand that?

THE DEFENDANT: I understand, yes.

THE COURT: Restitution will be in the full amount of each victim's losses to be determined by the Court. This is described in paragraphs 12 through 17 of the plea agreement. Okay.

So, do you understand restitution?

THE DEFENDANT: Yes.

THE COURT: And did you review paragraphs 12 through 17?

THE DEFENDANT: Yes.

THE COURT: All right.

You have to be charged $100 special assessment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

Additional penalties include a mandatory special assessment of $5,000, sex offender registration under the Sex Offender Registration Notification Act. That is described in paragraph 19. And criminal forfeiture, which is described in paragraphs 6 through 11.

Do you understand all of those penalties?

THE DEFENDANT: Yes, I understand all, Your Honor.

THE COURT: And did you review the additional paragraphs that I referred to, 19 and 6 through 11?

THE DEFENDANT: Yes.

THE COURT: Okay.

All right. Is the Defendant a U.S. citizen?

MS. HARAMATI: No, Your Honor.

THE COURT: All right.

So an additional possible consequence of a conviction for this offense, if you are not a U.S. citizen, is that it may have serious immigration consequences. Under Federal law, a broad range of crimes, including the one to which it is proposed you are going to plead guilty, possession

of child pornography, are categorized as what are called removable offenses.

So, removal and other possible immigration consequences are not decided by this Court, but rather they are decided by immigration authorities in a separate proceeding. So, no one here, not your lawyer, Government's lawyer, or me can tell you with certainty the effect of a conviction on your immigration status, but it is possible that conviction could lead to what's called an automatic removal from the United States.

I just want to be clear, automatic removal does not mean that the removal would happen before you serve any term of imprisonment. It refers to how the proceeding before the immigration authorities would go ahead. All right.

The agreement includes the following statement: The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any immigration consequences that the Defendant's plea may entail, even if the consequence is the Defendant's automatic removal from the United States.

Is that a correct statement?

THE DEFENDANT: Yes.

THE COURT: Okay.

All right. I am going to review how the sentencing process works, and this will be done by the District Judge, if he accepts your plea.

The District Judge does not have complete discretion to impose a sentence outside of the statutory minimum and maximum sentences set forth in the statute.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Sentencing is a multi-step process. First, the judge considers what are called the advisory sentencing guidelines. They have been issued by the United States Sentencing Commission to help a Judge determine what is a reasonable sentence in a criminal case. And these sentencing guidelines are advisory, but they are still an important consideration in sentencing, and the Judge will consider them in determining what sentence to give you.

Have you discussed the sentencing guidelines with your attorney and how they may apply in your case?

THE DEFENDANT: Yes.

THE COURT: Okay.

Give me one second.

(Pause in the proceedings.)

THE COURT: All right.

As the second step in the process, the Court will consider whether there are any factors present in your case that would allow the judge to depart from the advisory sentencing guidelines. Sometimes judges depart upwardly, sometimes they depart downwardly. The judge will also

consider factors included in a particular Federal statute, 18 United States Code Section 3553(a). The judge will weigh those factors against the facts and circumstances of your case.

It may be that after all of this analysis, the judge decides to impose a guidelines sentence, but it may be that the Judge decides to impose a non-guidelines sentence. The practical import for you is that until the date of sentencing, you cannot know with certainty what your sentencing guidelines will be or whether there will be grounds for the Judge to depart from them. You cannot know whether the Judge will impose a guidelines sentence or a non-guidelines sentence until the date of sentencing.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: All right.

In preparation for the sentencing, the District Judge will receive a Pre-Sentence Report from the Probation Department about you. In that report, Probation will recommend a sentencing guidelines range. You and your attorney will have the opportunity to review that report and challenge facts in it as Probation reported them. The Government will also have the opportunity to review and comment on that report. But it is important for you to know what the possible sentencing guidelines are for your case

based on the information available.

So, I am going to ask the Government to state now what it thinks the sentencing guidelines is likely to be in your case. You should keep in mind the Government maybe made a mistake about it or your attorney will have made a mistake about the sentencing guidelines. It is possible that they are missing information. It's possible that circumstances could change between now and the time of sentencing.

But I am going to start by asking the Government.

MS. DELANEY: The Government estimates that the Defendant's guidelines, which includes three-point reduction for acceptance of responsibility, resulted in an adjusted offense level of 28, which carries a range of imprisonment of 78 to 97 months, assuming that the Defendant falls within Criminal History Category I.

THE COURT: All right.

So for the Defendant, do you understand what the Government just said?

THE DEFENDANT: Yes.

THE COURT: All right.

Defense Counsel, do you agree with the Government's calculation?

MS. HARAMATI: Yes, Your Honor.

THE COURT: All right.

Included in the plea agreement is a stipulation by

the Defendant to the guidelines calculation included in the plea agreement, which was just summarized by the Government.

Do you confirm that stipulation, Mr. Ringel?

THE DEFENDANT: Yes.

THE COURT: All right.

It is important for you to know, Mr. Ringel, that the District Judge is not bound by anything in the plea agreement or what the Government or your attorney estimates the sentencing guidelines can be. The District Judge can sentence you according to his interpretation of the sentencing guidelines and the applicable law.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: And although the Judge will consider the sentencing guidelines as a factor in determining what your sentence is, he has the authority under the law to decide and impose a sentence that is more severe, the same as, or less severe than the sentencing guidelines.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Okay.

Okay, I am going to look at a few other parts of the plea agreement.

Included in this plea agreement is an appellate waiver that is set forth in paragraph 4. The whole appellate

waiver is important, but I am just going to read the first sentence of it:

The Defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28 United States Code Section 2255 or any other provision;.

A, the conviction;

B, the incarceratory portion of the sentence in the event that the Court imposes a term of imprisonment of 108 months or below;

C, the duration of supervised release, if it is less than or equal to the statutory maximum, or;

D, any condition of supervised release about which the Defendant has notice prior to sentencing and an opportunity to object.

Do you confirm that agreement?

THE DEFENDANT: Yes.

THE COURT: And did you review paragraph 4 with your attorney?

THE DEFENDANT: Yes.

THE COURT: And are you in agreement with the whole appellate waiver?

THE DEFENDANT: Yes.

THE COURT: All right.

So let's briefly go over the whole plea agreement.

Do you have any questions about it?

THE DEFENDANT: No.

THE COURT: Do you understand the entire agreement?

THE DEFENDANT: Yes.

THE COURT: Did you review it with your attorney?

THE DEFENDANT: Yes.

THE COURT: And when you were reviewing it with your attorney, did you speak with your attorney in Hebrew?

THE DEFENDANT: Yes.

THE COURT: And she communicated with you in Hebrew?

THE DEFENDANT: Yes.

THE COURT: And did you have any difficulties with those communications?

THE DEFENDANT: No.

THE COURT: All right.

Do you confirm that you agree with the entire plea agreement?

THE DEFENDANT: Yes.

THE COURT: All right.

So, at this point, are you ready to enter a plea, Mr. Ringel?

THE DEFENDANT: Yes.

THE COURT: Do you need to speak with your attorney before you do that?

THE DEFENDANT: We've spoken, no.

THE COURT: All right.

Counsel, do you know of any reason why your client should not plead guilty to the charge of possession of child pornography?

MS. HARAMATI: I do not, Your Honor.

THE COURT: Are you aware of any viable legal defense to the charge?

MS. HARAMATI: No, Your Honor.

THE COURT: In your professional opinion, is it in Mr. Ringel's best interest to proceed with the guilty plea?

MS. HARAMATI: It is.

THE COURT: And in your professional opinion, is it in Mr. Ringel's best interest to enter that guilty plea pursuant to the plea agreement that has been marked as Court Exhibit 1?

MS. HARAMATI: Yes, Your Honor.

THE COURT: Okay.

So, Mr. Ringel, the single count in the Information is possession of child pornography in violation of Federal law 18 United States Code Sections 2252(a)(4)(B); there is also a reference to 2252(b)(2).

How do you plead; guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right.

So, now I need to ask you what it is that you did such that you are, in fact, guilty of this count, and I need

you to tell me in your own words.

I can see you have some paper in front of you. You are free to refer to that paper, but I need you to recount from your own recollection what it is that you did such that you are, in fact, guilty of this charge.

THE DEFENDANT: In May 2025, I knew that I had on my phone at least one sexually explicit picture in what looked like, what appeared to be, a child younger than twelve years old engaging in sexually explicit conduct. That picture was downloaded from an internet link. And this was on my cell phone when I came to JFK Airport in May 2025.

THE COURT: Would you agree, JFK Airport is in the Eastern District of New York; is that correct?

THE DEFENDANT: Correct.

THE COURT: All right.

So, Mr. Ringel, did you know that the production of the photograph that you just described involved the use of a minor engaged in sexually explicit conduct?

THE DEFENDANT: Yes.

THE COURT: All right.

Defense Counsel, do you want your client to add anything else to that?

MS. HARAMATI: No, Your Honor.

THE COURT: Government, is that a satisfactory allocution?

MS. DELANEY: Yes, Your Honor.

THE COURT: All right.

Let me ask you a few other questions.

Mr. Ringel, are you making this plea of guilty voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened you or forced you to plead guilty?

THE DEFENDANT: No.

THE COURT: Other than the plea agreement, Court Exhibit 1, has anyone made any promises to you that have caused you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made any promises to you about what your sentence may be if you plead guilty?

THE DEFENDANT: No.

THE COURT: And to return to the immigration point, do you still want to go ahead with this guilty plea despite the fact that it may have very serious immigration consequences for you, including possibly your removal from the United States?

THE DEFENDANT: Yes.

THE COURT: All right.

Based on the information provided to me here today, I believe that the Defendant, Mr. Ringel, is physically and

mentally well enough to have proceeded with the proceedings today; that he is acting voluntarily; that he fully understands the charge against him; that he fully understands his rights; that he fully understands the consequences of his plea; and that there is a factual basis for the plea in the record.

So I, therefore, respectfully recommend to the District Judge that he accept Mr. Ringel's guilty plea to the single count in the Information.

All right. Do we have a sentencing date, Suzanne?

THE COURTROOM DEPUTY: We do not, Judge.

THE COURT: Okay.

We do no not have a date from the District Judge as to when the sentencing hearing will be, so, Counsel, you should be in touch with the District Judge's chambers to know when that is going to be.

One of the things that I mentioned earlier is that there will be a report prepared about Mr. Ringel by the Probation Department. Defense Counsel, would you like us to let Probation know that you would like to be part of that interview process?

MS. HARAMATI: Yes, Your Honor.

THE COURT: Okay, we will do that.

We are going to give the original plea agreement back to the Government. The Government should maintain

custody of it. If you could kindly provide a copy of it to Defense Counsel so they have a fully executed copy as well as to the Court. All right.

So, the Defendant, as we were talking about earlier, is out on bond.

Is there anything that should change? And I just remind you, I let the Pre-Trial Services officer go. If we need to bring her back, we can do that.

For the Government?

MS. DELANEY: No, the Government is not requesting any change to Mr. Ringel's bond at this time, Your Honor.

THE COURT: Anything on the Defendant's side?

MS. HARAMATI: No, Your Honor.

THE COURT: Okay.

So, with regard to the change of plea process, anything else that we should put on the record here?

MS. DELANEY: No, Your Honor, nothing from the Government.

MS. HARAMATI: Not from the Defense, Judge.

THE COURT: Okay.

So, where we are leaving off is you are going to check with the District Judge's chambers about the sentencing date, and Counsel for the Defense is going to follow up with Pre-Trial to work on them making a language accessible psychosexual evaluation available, and then, if necessary and

appropriate, as ordered by Pre-Trial, follow-up treatment.

MS. HARAMATI: Yes, Your Honor.

THE COURT: Okay.

All right, thanks everyone.

ALL: Thank you, Judge.

(Matter concluded.)

oooOooo



*I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

/s/ Victoria A. Torres Butler September 4, 2026