**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR:MND
F. #2025R00335

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 8, 2026

By ECF

The Honorable Ramon E. Reyes, Jr.
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Yehuda Ringel
Criminal Docket No. 26-44 (RER)

Dear Judge Reyes:

The government respectfully submits this letter in advance of sentencing in the above-referenced case, currently scheduled for September 15, 2026 at 11:00 a.m. On March 31, 2026, the defendant Yehuda Ringel pleaded guilty before the Honorable Vera M. Scanlon to the sole count of the information, which charged the defendant with possession of child pornography, in violation of Title 18, United States Code, Section 2252(a)(4)(B). For the reasons explained below, a sentence within the applicable United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 78 to 97 months' imprisonment would be sufficient, but not greater than necessary to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

I. Offense Conduct

The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report dated July 30, 2026 ("PSR").

On May 8, 2025, the defendant arrived at John F. Kennedy International Airport from Tel Aviv, Israel. PSR ¶ 10. The defendant was traveling with his wife and two minor children. Id. The defendant was stopped by Customs and Border Protection ("CBP") officer and referred for a secondary inspection. Id. ¶ 11.[1] CBP first examined the defendant's Apple iPhone. Id. ¶ 12. The defendant voluntarily provided CBP the passcode to this device. Id. The defendant also changed the preferred language on his phone from Hebrew to English. Id. CBP then reviewed the defendant's device and uncovered numerous videos and images of CSAM, as well as messages

[1] CBP had identified the defendant as a possible subject who may be in possession of child sexual abuse material ("CSAM").

indicating the defendant was purchasing CSAM from the internet. Id. CBP then contacted Homeland Security Investigations ("HSI") to initiate a further investigation. Id.

A Special Agent from HSI arrived on scene and conducted her own preliminary review of the defendant's cellular phone. PSR ¶ 13. A preliminary review of the defendant's phone revealed nearly 2,000 videos and images of CSAM, primarily depicting minor males ranging in age between infancy and age 13. Id. The defendant primarily stored this CSAM in an encrypted messaging application, Telegram, as well as in an encrypted photo album on his phone. Id. The defendant was arrested on May 9, 2025. During his interview with law enforcement agents, the defendant initially indicated that he had received CSAM on his phone because his employee had requested the material on Telegram without his knowledge. Id. ¶ 14.[2]

After obtaining a search warrant, HSI further reviewed the defendant's device and discovered approximately 4,902 videos and 10,361 images of CSAM on the defendant's phone. PSR ¶ 15. Contrary to his statements regarding an employee's involvement in procuring the CSAM, the investigation also showed the defendant made numerous purchases of CSAM via his PayPal account and via cryptocurrency transfers, and specifically requested that CSAM vendors not send him any duplicate videos. Id. ¶¶ 16-18.

The CSAM videos and images recovered from the defendant's device depict infants, prepubescent boys and pubescent boys being sexually abused, including videos or images where the victims were bound, gagged, held down and/or blindfolded. Id. ¶¶ 20-28. For example, one image depicts a prepubescent boy lying on his back with his limbs tied together with leather handcuffs and a red ball gag in his mouth, with an adult hand touching his scrotum. Id. ¶ 20. Another image depicts an adult male penetrating the anus of a blindfolded naked pubescent boy. Id. ¶ 21. Another video depicts an adult male using rope to tie a pubescent boy's hands behind his back, and then bind the victim's feet to his hands. The adult male then anally penetrates the victim with his penis. Id. ¶ 29. Other photographs and videos depict prepubescent males performing oral sex on adult men. For example, there is a video of a boy appearing to be four years old, who is forced to wear a dog collar and perform oral sex on an adult male, as the adult male pins the child's arms down. Id. ¶ 28.

## II. The Defendant's Arrest, Detention and Release

As noted above, the defendant was arrested on May 9, 2025. The defendant has no previous criminal history. The defendant was originally detained in connection with this arrest, but was released on bond on or about September 16, 2025. PSR ¶ 82. As detailed in the PSR, the defendant has failed to comply with the Court-ordered terms of release on numerous occasions. Id. ¶¶ 3-8. For example, in November 2025, Pretrial Services learned that the defendant violated his restrictions on his internet access after he was observed in his residence using an unauthorized flip phone and an unauthorized laptop. Id. ¶ 4. The defendant also failed to inform Pretrial Services of medication that he was taking and ignored curfew on multiple occasions. Id. ¶¶ 5-6.

[2] As noted in the PSR, the defendant's statements during this interview were translated using a language translation application. PSR ¶ 14.

He also provided Pretrial Services with a urine sample that tested positive for marijuana and amphetamines on May 26, 2026. Id. ¶ 7.

## III. Guidelines Calculation

The government agrees with the Guidelines calculation set forth in the PSR, which is as follows:

| | | |
|---|---|---|
| Base Offense Level (U.S.S.G. § 2G2.2(a)(1)) | | 18 |
| Plus: | The offense involved a prepubescent minor or a minor who had not attained the age of 12 years (U.S.S.G. § 2G2.2(b)(2)). | +2 |
| Plus: | The offense involved the sexual abuse or exploitation of an infant or toddler (U.S.S.G. § 2G2.2(b)(4)(B)). | +4 |
| Plus: | The offense involved the use of a computer (U.S.S.G. § 2G2.2(b)(6)). | +2 |
| Plus: | The offense involved over 600 images[3] (U.S.S.G. § 2G2.2(b)(7)(D)). | +5 |
| Less: | Timely acceptance of responsibility for the offense (U.S.S.G. §§ 3E1.1(a), (b)). | -3 |
| Total: | | 28 |

PSR ¶¶ 36-48. Based on a total offense level of 28 and a Criminal History Category of I, the Guidelines range is 78 to 97 months' imprisonment. Id. ¶ 92.

## IV. Applicable Law

As the Court is aware, under United States v. Booker, 543 U.S. 220, 245 (2005), the Guidelines are advisory and not mandatory. The Supreme Court made clear that district courts are still "require[d] . . . to consider Guideline ranges" in determining sentences, but that they also may tailor the sentence in light of other statutory concerns. Booker, 543 U.S. at 220; see 18 U.S.C. § 3553(a). "[S]entencing judges remain under a duty with respect to the Guidelines . . . to consider them, along with the other factors listed in section 3553(a)." United States v. Crosby, 397 F.3d 103, 111 (2d Cir. 2005).

---

[3] Specifically, the instant offense included approximately 4,902 videos and 10,361 images. PSR ¶ 23. Per Application Note 6(B)(ii), one video is considered to have 75 images. Therefore, the offense involved the equivalent of 378,011 images.

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party"; the Court "may not presume that the Guidelines is reasonable" and "must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted).

Section 3553(a) requires a court to consider a number of factors in imposing a sentence, including the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the violation, to promote respect for the law, and to provide a just punishment for the violation; the need for the sentence to afford adequate deterrence to criminal conduct; to protect the public from further crimes or violation of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. The court must also consider the kinds of sentences available, the applicable sentencing guidelines and pertinent policy statements, and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553(a)(1)-(6).

## V. A Guidelines Sentence Is Appropriate

The government respectfully submits that a significant custodial sentence within the Guidelines range of 78 to 97 months' imprisonment is appropriate in this case. As an initial matter, the "nature and circumstances of the offense"—the possession of material involving the sexual exploitation of infants and children—is not only extremely serious, but also one of the most insidious victimizations of children. The prevention of sexual exploitation and abuse of children is of paramount importance due to the psychological and physical effects that abuse has on children and their families, effects that last for a lifetime. An appropriate sentence must reflect the gravity of these harms while achieving the fundamental goals of deterrence, just punishment, and public protection.

Although the government is unaware of any direct physical abuse of minors by the defendant, the possession of images and videos of child sexual victimization is not a victimless crime. By downloading, collecting, and viewing images and videos of child pornography, the defendant re-victimized the minors in the images and videos, and helped fuel the market for such abuse. See, e.g., United States v. Gouse, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); United States v. Miller, 594 F.3d 172, 189 (3d Cir. 2010) ("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). "Indeed, one of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." United States v. Sherman, 268 F.3d 539, 547 (7th Cir. 2001). Thus, an appropriate sentence must give notice to the defendant and the public that the crime has serious consequences in order to provide general deterrence.

A significant custodial sentence is also necessary to specifically deter the defendant and to promote respect for the law. The defendant was found to be in possession of tens of thousands of pieces of CSAM material. These materials depict graphic sexual abuse of children, including masochistic materials depicting the rape of bound prepubescent minors. The defendant knew what these images and videos contained and yet, he continued to receive and collect such materials. In fact, when purchasing these materials, the defendant made efforts to ensure he received new videos of abuse, challenging when the CSAM vendor sent duplicate videos. PSR ¶ 16. Moreover, by participating in chats on encrypted messaging applications like Telegram where he sought and purchased these materials, the defendant directly contributed to the underground market for child pornography. A custodial sentence is thus needed to punish and deter the defendant from committing further crimes. See United States v. Butler, 733 F. App'x 565, 566 (2d Cir. 2018) (rejecting the defendant's argument that an 87-month sentence for receipt and possession of child pornography was unreasonable because "he never physically touched a child [and only] engaged in the conduct for under a year" because of the "serious nature" of his crime, particularly collecting abusive "videos that are extremely violent and sadistic").

The government acknowledges that the Second Circuit has cautioned that the applicable Guidelines section here—Section 2G2.2—is "fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." United States v. Dorvee, 616 F.3d 174, 184-87 (2d Cir. 2010) (explaining that the applicable enhancements concentrate all child pornography offenders at or near the statutory maximum and can make it difficult to distinguish between those who possess child pornography and the most dangerous offenders, who for example, directly produce child pornography or engage in hands-on sexual abuse). However, a sentence within the applicable Guidelines range—78 to 97 months—is not comparable to the sentences that were vacated in Dorvee (statutory maximum of 240 months for distribution of child pornography) and in United States v. Jenkins, 854 F.3d 181 (2d Cir. 2017) (sentence of 225 months and 25 years of supervised release for possession of child pornography) for substantive unreasonableness. See, e.g., United States v. Hagerman, 506 F. App'x 14, 17-18 (2d Cir. 2012) (noting that the defendant was not sentenced to the statutory maximum and upholding a 97-month sentence for receipt and possession of child pornography where the defendant had no prior criminal history, was a victim of sexual abuse, had never sexually abused a minor, and where a psychological evaluation concluded "he poses only a low to moderate risk of reoffending"); United States v. Guard, 152 F.4th 375, 393 (2d Cir. 2025) (upholding 151-month sentence for transportation, receipt and possession of child pornography as "reasonable" despite the defendant's arguments that "the short duration of his offense conduct, the small number of files [the defendant] accessed, the fact that [the defendant] did not maintain a collection of child pornography or store such images on his digital devices, and [his] status as a married father of two at the time of the offense" warranted a shorter sentence).

The 3553(a) factors support a sentence within the requested Guidelines range here. "The harm caused by a pedophile, be he a distributor or mere consumer in child pornography" is beyond legitimate dispute; in all cases, "the mere existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." United States v. Reiner, 468 F. Supp. 2d 393, 397 (E.D.N.Y 2006) (emphasis added).

The defendant cites several cases where defendants received downward variances from the Guidelines (including sentences for time served), but those cases involved defendants who possessed fractions of the amount of CSAM (equivalent of 378,011 images) that was recovered from the defendant's device. See, e.g., United States v. Ferreira, No. 20-CR-229 (MKB) (E.D.N.Y.), at ECF No. 53 (Ferreira possessed 3,201 images and 110 videos depicting child pornography, which amounts to approximately three percent of the defendant's collection of abusive materials); United States v. Mughal, 20-CR-488 (NGG) (E.D.N.Y.), at ECF No. 25 (Mughal possessed 23 videos depicting child pornography, which amounts to .4 percent of the defendant's collection of abusive materials); United States v. Soto, No. 17-CR-539 (ERK), at ECF No. 25 (Soto possessed 12 images and 15 videos depicting child pornography, which equates to .3 percent of the defendant's collection of abusive materials); United States v. Mule, 14-CR-269 (NGG) (E.D.N.Y.), at ECF No. 26 (Mule possessed 275 images and 350 videos depicting child pornography, which amounts to approximately seven percent of the defendant's collection of abusive materials); United States v. Schafer, 18-CR-569 (SJ) (E.D.N.Y.), at ECF No. 52 (Schafer possessed 1000 images and videos depicting child pornography, which amounts to approximately .2 percent of the defendant's collection of abusive materials).

Finally, the government also requests that the Court impose a term of supervised release, including all of the mandatory and standard terms of supervised release set forth in U.S.S.G. §§ 5D1.3(a)-(b). The government further requests that the Court impose the special conditions proposed in the PSR, which are warranted given the nature and circumstances of the offense—possession of CSAM and use of the internet to view such images and videos.

## VI. Restitution

Restitution is mandatory in this case. PSR ¶ 105. The Court is required to order restitution for the full amount of the victims' compensable losses. Id. To date, no victims have sought restitution. However, as reflected in the PSR, law enforcement officials are awaiting receipt of the Victim Information Report prepared by the Federal Bureau of Investigation which may identify specific victims depicted in the child pornography found on the defendant's phone. Accordingly, the government respectfully requests a hearing within 90 days of sentencing to determine what, if any, restitution is owed to any minor victim. 18 U.S.C. § 3664(d)(5).

## VII. Conclusion

The seriousness of the underlying offense is evident on its face, and adequate punishment of the offense itself, the need for specific and general deterrence, and, most importantly, protection of children all call for a significant sentence. The government therefore

requests that the Court impose a sentence within the Guidelines range, which would be sufficient, but not greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Molly N. Delaney
Molly N. Delaney
Assistant U.S. Attorney
(718) 254-6571

cc: Clerk of Court (RER) (by ECF and e-mail)
Counsel of Record (by ECF and e-mail)
U.S. Probation Officer Frank Nikolaidas (by e-mail)